**Affirmed and Opinion filed May 31, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

—————————————

## NO. 14-10-01253-CR
—————————————

### JUAN MIRANDA-CANALES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1160942**

## OPINION

Appellant, Juan Miranda-Canales, appeals from his conviction for murder after a jury trial.   Tex. Penal Code Ann. § 19.02 (West 2011).   Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant does not appeal the sufficiency of the evidence supporting his conviction; therefore, we provide only those facts necessary as background to this appeal.

On the evening of March 29, 2008, appellant was riding in the backseat of a car driven by Michael Reyes.   Jose Reyes was also riding in the backseat along with

appellant. All three were associated with the MS-13 street gang. There was a fourth person sitting in the front passenger seat, who was not associated with the gang.

While driving down a street in the territory of a rival street gang, Michael Reyes observed people he believed were members of the rival gang standing on the street. Michael Reyes made another pass down the street and instructed appellant and Jose Reyes to shoot. Both fired handguns out of the car's rear side windows, hitting three people. One of those hit was the complainant, who died a few days later.

At the close of the evidence, the case was submitted to the jury. The jury found appellant guilty as charged. After reading the verdict, the trial court asked the jury collectively if that was their verdict and they answered: "Yes." The court then asked: "All right. Anything further from the defense?" Appellant's trial counsel answered: "No, Your Honor." At that point, the trial court sent the jury home for the evening with the instruction to return the next morning to start the punishment phase of the trial. The trial court instructed the jury not to discuss the case with anyone.

The next morning, after the jury entered the courtroom, the trial court stated: "Yesterday, this jury found the defendant guilty of the offense of murder. At this time, I will poll the jury upon my own motion." Each juror then individually agreed that the "guilty" verdict was his or her verdict. The trial court then asked: "Then all members of this jury answered in the affirmative to the poll; is that correct?" The jury then answered: "Yes." The judge then sent the jury back into the jury room.

At that point, appellant called the bailiff of the court to the witness stand. The bailiff testified that when he entered the jury room that morning, Juror No. 19 approached him and told him that "her husband was in the penitentiary and also was a gang member and that she felt that she had been pressured into the guilty verdict yesterday."

The judge then conducted an individual voir dire of Juror No. 19 in his chambers. All parties, including appellant, were present. During that voir dire, Juror No. 19

2

informed the judge that her husband was a gang member and her teenage son might be a gang member.   She also said:

> And being that it was a gang related case, I personally just did not feel that he's guilty of murder…. So, I know that I -- right now, when we were in the court, I know that I still affirmed guilty of murder.   I talked to the bailiff, but I didn't want to continue this, even though the verdict was in yesterday and I said that this morning.

Juror No. 19 admitted discussing the case with her husband the previous evening.   She also told the judge that she felt pressured to go along with the other jurors in voting guilty but the other jurors did nothing that put undue pressure on her; it was just the way she felt. She then told the judge that she could not be fair during the punishment phase of the trial because she wanted to sentence appellant to serve five years in the penitentiary even though she had not yet heard any evidence in the punishment phase of the trial.   Following her testimony, the judge excused Juror No. 19 from the room.

> Appellant then moved for a mistrial asserting:

> Under the circumstances, Your Honor, at this point, [appellant] having taken testimony from [Juror No. 19] that she has been unduly influenced, felt pressured, and it's not really – and she may have even been influenced outside by her husband's association or known association with gangs and whatever, Judge, and at this point, I think that we would move for a mistrial at this point, Judge.

The trial court denied appellant's motion for mistrial.

The trial court excused Juror No. 19 from the jury and announced they would proceed to punishment with 11 jurors.   Appellant then changed his punishment election so that the court would decide his punishment.   Following a pre-sentence investigation hearing, the trial court sentenced appellant to thirty years' confinement.   This appeal followed.

3

In issue one, appellant contends the trial court committed reversible error by accepting the verdict of the jury that was not a unanimous verdict. In issue two, appellant asserts the trial court erred by failing to instruct the jury to retire again to consider its verdict after Juror No. 19 indicated the verdict was not her verdict, violating Article 37.05 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 37.05 (West 2006). Article 37.05 provides:

> The State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer in the negative, the jury shall retire again to consider its verdict.

*Id.*

In the present case, the jury was polled and each juror, including Juror No. 19, individually affirmed that the "guilty" verdict was his or her verdict. Therefore, the trial court was authorized to enter the verdict upon the minutes under Article 37.05. *Id.* After the subsequent individual voir dire of Juror No. 19 in the trial court's chambers, appellant did not request that the trial court instruct the jury to retire again to consider its verdict; rather, appellant moved for a mistrial and the trial court denied the motion. Because appellant's complaint in issue two does not comport with his objection or request made in the trial court, we conclude he has not preserved this issue for appellate review. *See Drew v. State*, 76 S.W.3d 436, 462 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("A complaint on appeal that does not comport with the objection lodged at trial is waived."); *see also Llorance v. State*, 999 S.W.2d 866, 869 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding the defendant waived any alleged error in the trial court's handling of the polling of the jury under Article 37.05 by not lodging a timely and specific objection). In addition, because each of the jurors answered affirmatively when asked if the guilty verdict was his or her verdict, even if appellant had preserved this issue for appellate review, we

4

conclude the trial court did not violate Article 37.05 when it accepted the guilty verdict rather than instruct the jury to retire to continue its deliberations. Accordingly, we overrule appellant's second issue.

Turning to appellant's first issue, the controlling question in this case is: what should a trial court do when, after a guilty verdict has been accepted and entered upon the minutes of the court, a juror tells the court, effectively, that she regrets her vote? This is not a case involving pre-verdict outside influence on a juror, nor does it involve an allegation of improper pressure or duress on a juror during deliberations.

The following exchange took place during the individual voir dire of Juror No. 19 in the trial court's chamber:

| [Prosecutor:] | In what way did those jurors pressure you to vote the verdict that you did not believe in? |
|---|---|
| [Juror No. 19:] | They didn't see what I see. They said that they're right and I'm wrong. I saw it differently. In my opinion, it wasn't enough evidence, even though everything was presented. But nobody agrees with me, so I feel like I'm the only one thinking this way and I thought, well, I don't need a whole bunch of jurors mad at me to go alone and say not guilty. I need to say guilty, because they don't want this to go another week, two weeks, a month. And I understand that. I have a job too. I want to go back to work, go back to my life. I didn't know this was gang related. It's affecting me personally. |

....

| [Prosecutor:] | You said you felt pressured by the jurors. What did they say to pressure you other than that they disagreed with your opinion? |
|---|---|
| [Juror No. 19:] | They told me it's on the video, self admission, but there was more said than the video. And I know - - in my opinion, I know that when you don't follow an order, |

|  |  |
|---|---|
|  | you get whacked.  It wasn't going to be easy just to step out. |
| [Prosecutor:] | Okay. But let me get back to what I'm asking you.   All they did then was point out to you the evidence that they believed showed him to be guilty.   Is that what you're saying?   They didn't pressure you by being ugly to you, did they? |
| [Juror No. 19:] | I know what you're saying.   There is no gun to my head.   I understand that. |
| …. |  |
| [Prosecutor:] | Okay.   But what did they do to push you into finding a man guilty of a crime you didn't believe he committed?   What did they say to you that put you in that position?   That's what I'm trying to understand.   'Cause so far, you've just got them showing you why they disagreed with you through the evidence and saying that they disagreed with your opinion.   What was it about that that put undue pressure on you? |
| [Juror No. 19:] | I can't explain that.   It's just the way I feel. |

In *Tompkins v. State*, the defendant argued the trial court erred when it denied his motion for new trial because, in his view, the jury's verdict was not unanimous.   *Tompkins v. State*, 869 S.W.2d 637, 640 (Tex. App.—Eastland 1994) *pet. dism'd improvidently granted*, 888 S.W.2d 825 (Tex. Crim. App. 1994).   The appellate court reviewed the testimony of one of the jurors from the defendant's trial who testified during the motion for new trial hearing.   *Id.* at 640–41.   The court of appeals held that the "trial court did not err in overruling the motion for new trial."   *Id.* at 641.   The court went on to state that the "record shows that, when the jury was polled, [the juror] announced in open court that she voted 'guilty.'   Her private reservations do not cancel the legal effect of her vote; consequently, there was a unanimous verdict finding [the defendant] guilty."   *Id.*

In *Franks v. State*, the defendant argued the trial court erred when it denied his motion for mistrial based on juror misconduct.[1] *Franks v. State*, 90 S.W.3d 771, 798 (Tex. App.—Fort Worth 2002, no pet.). According to the defendant, the trial court's use of an *Allen* charge exerted an improper outside influence on the jury's decision to find him guilty. *Id.* at 799. The defendant presented the testimony of one of the jurors during the hearing on his motion for mistrial. According to the defendant, the trial court's *Allen* charge coerced the juror into changing her vote to guilty. *Id.* at 800. The court of appeals then stated:

> There is no evidence that anyone physically threatened or bribed [the juror] to vote guilty, and she never expressed that she did not actually agree with the jury's verdict after the verdict was given and the jury was polled. In fact, [the juror] expressed agreement with the guilty verdict directly after the verdict was read. Instead, [the defendant's] complaint merely alleges that she was coerced into voting guilty. However, we believe that this evidence only relates to influences that came to bear inside the jury room as part of its deliberations and cannot constitute an outside influence…. Consequently, the trial court did not abuse its discretion in determining that [the juror's] vote was free of outside influence and voluntarily given and did not err in denying [the defendant's] motion for mistrial on this point.

*Id.* (citations omitted).

In *Wood v. State*, the defendant argued that the trial court erred when it denied his motion for mistrial based on an exchange between the trial court and one of the members of

---

[1] The *Franks* Court's analysis relies on Texas Rule of Evidence 606(b), which provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex. R. Evid. 606(b).

the jury after the jury's verdict had been read in open court. *Wood v. State*, 87 S.W.3d 735, 736 (Tex. App.—Texarkana 2002, no pet.). During the exchange, the juror asked the trial court if a juror could "change their mind after we have come to the conclusion of guilty." *Id.* at 737. The trial court responded that "[a]fter the verdict has been read and accepted, the answer would be no." *Id.* The exchange continued for some time thereafter and when it concluded, the defendant moved for a mistrial, which the trial court denied. *Id.* at 738. On appeal, the defendant argued the exchange was, among other things, an improper inquiry into the jury deliberation process. The court of appeals disagreed, stating that the "jury had completed its deliberations on guilt/innocence, and its verdict had been accepted. The trial judge properly told the juror she could not subsequently change her verdict." *Id.* at 739–40.

In *Holifield v. State*, during deliberations, the jury sent out a note which stated in pertinent part:

> [I]s it permissible to have read into the record of this case an opinion of the jury which would not affect the verdict, but express the feeling of the jury? We have reached a unanimous verdict.

*Holifield v. State*, 538 S.W.2d 123, 124 (Tex. Crim. App. 1976). The jury was then called into the courtroom and when asked, the foreman of the jury told the trial court that the jury had reached a verdict. *Id.* The guilty verdict was then read aloud by the trial court. *Id.* The trial court then asked the jury collectively if the verdict was their verdict and the jury answered affirmatively. *Id.* The members of the jury were then polled and each individually agreed the verdict was his or her verdict. *Id.* The trial court then discharged the jury to which the defendant objected. *Id.* During the ensuing hearing, numerous jurors testified that they had not intended to vote guilty, had been misled or tricked into voting guilty and that they had not completed their deliberations when the verdict was returned. *Id.* The Court of Criminal Appeals began its analysis by pointing out that the jury had informed the trial court that it had reached a unanimous decision and then, when polled, each juror acknowledged that the guilty verdict was his or her verdict.

*Id.* The court held that "jurors will not be permitted to impeach their verdicts by giving their reasons for agreeing thereto." *Id.* at 125. The court then went on to state:

> Even though one or more jurors may have disagreed with a portion of the court's charge … and at least one juror had misgivings about returning a guilty verdict, this is not grounds for granting a new trial.

*Id.*

In light of the foregoing case law dealing with jurors, their verdicts, and their deliberations, the trial court acted properly in the present case. We overrule appellant's first issue on appeal.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/ Margaret Garner Mirabal
Senior Justice

Panel consists of Justices Seymore, Boyce, and Mirabal.[2]

Publish — TEX. R. APP. P. 47.2(b).

---

[2] Senior Justice Margaret Garner Mirabal sitting by assignment.