**Eric John LLORANCE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–97–00734–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 15, 1999.

Patricia Sedita, Houston, for appellant.

Julie Klibert, Houston, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, FOWLER, and WITTIG.

### MAJORITY OPINION

DON WITTIG, Justice.

Appellant pled not guilty to unauthorized use of a motor-propelled vehicle. A

jury found appellant guilty with two enhancements, and the jury sentenced appellant to twenty years confinement in the Texas Department of Criminal justice, Institutional Division. A motion for new trial was overruled by operation of law, and appellant timely filed notice of appeal. The sole issue before us involves the application of article 37.05 of the Texas Code of Criminal Procedure.[1]

Appellant contends the trial court failed to follow the dictates of article 37.05 when the court did not instruct the jurors to immediately return to deliberations after one juror failed to give an affirmative response when polled. After the jury returned in open court on the guilt/innocent phase, a verdict of guilty was read. Appellant requested the jury be polled. This proceeded routinely with six jurors responding affirmatively. Then came the seventh juror, Mr. Moraida. The following colloquy ensued:

> COURT: Is this your verdict, Mr. Moraida?
>
> JUROR: You're pronouncing it correctly, but I've got a question, if I can.
>
> COURT: You have a question?
>
> JUROR: Yeah. I was told it had to be a unanimous vote either way, yes or no.
>
> COURT: It's unanimous. If you want guilt, it has to be a unanimous verdict.
>
> JUROR: There can't be nothing in between there; is that correct?
>
> COURT: There are only two options.
>
> JUROR: There is—right, there is two options. That's what I am asking, if I have an option of no, do I have to change ten other people's mind?
>
> COURT: Hold it. I'm sorry.
>
> JUROR: That this my question.
>
> COURT: If you have an option of no, you have to change ten people's minds?

JUROR: Yes.

> COURT: Maybe I don't understand that question.
>
> JUROR: Okay. We had a discussion. And in order to come up with a verdict, we either had to be a yes or no.
>
> COURT: Guilty or not guilty.
>
> JUROR: Yes.
>
> COURT: I'm assuming twelve people vote guilty, or ya'll wouldn't be sitting out here?
>
> JUROR: Right.
>
> COURT: And that's why I'm verifying that twelve people voted guilty.
>
> JUROR: Right. That's why I'm bringing up my point, as far as if I vote no, am I going to have to—
>
> COURT: If you vote not guilty, we don't have a verdict at this point.
>
> JUROR: So either—It's either yes or no. So if I vote no, I'm going to have to change the jurors' minds to think like me? Is that what I'm-
>
> DEFENSE: I understand what he's saying judge.
>
> COURT: I don't think I do.
>
> DEFENSE: Can I approach?
>
> JUROR: I've never been a juror. I've never been in a courtroom. This is my first time. That's why I'm asking. And I asked a question back there that if I voted no, right? If you voted not guilty, would we stay in that room back there until we came up with a yes verdict?
>
> COURT: You would continue deliberating until you were released by the court.
>
> JUROR: Okay, but—
>
> DEFENSE: I have to make a contemporaneous objection.

---

1. Tex.Code Crim. Proc. Ann. art. 37.05 (Vernon 1981).

COURT: Approach the bench.

(AT THE BENCH)

DEFENSE: Judge, if that question were to have to come back from the jury room, you would have sent back a note stating that you are to continue.

COURT: Refer to the charge and continue deliberating.

DEFENSE: Exactly.

COURT: I still don't have an answer to the question.

DEFENSE: Okay. My request and I believe that his question is in the line of what will happen if there is a hung jury if they are not able to reach a verdict, a unanimous verdict.

COURT: No, that's not what he said.

DEFENSE: But I think that's what he's asking.

COURT: I can't answer a question that hasn't been asked.

DEFENSE: Okay. Could you inquire further into that line?

COURT: I'm going to ask this question one more time, and we're going to see. Is you're verdict of guilty, Mr. Moraida, in cause number 738821?

JUROR: If it's no, are we going to have to go back in there and sit in that room until we all come to an agreement? That's my question.

COURT: If your answer to my question that I just put to you is that your verdict is not guilty, you're going to go back in the room and continue deliberating or I release you for the evening to continue deliberating.

JUROR: Until we all say yes or no?

COURT: Until such time as you're released by the court.

JUROR: Your telling me we all have to come to agreement before you'll let us go home?

COURT: I am not telling you you have to come to an agreement before you all go home.

JUROR: Your telling me I'm going to have to convince the other people to think like me, and I can't do that. So majority votes. I said yes.

DEFENSE: Judge—

COURT: Just a minute. Would ya'll please go back in the jury room?

A discussion over this exchange then occurred at the bench, during which time the trial judge sent the jury back to the jury room. "Just a minute. Would ya'll please go back in the jury room?" The bench conference continued when the jury once again buzzed indicating they had again reached a verdict. A guilty verdict was again announced and the jury was polled for the second time. This time all answered affirmatively although there was some disagreement concerning an alleged frustrated non-verbal reaction by Mr. Moraida.

■ Appellant argues that once Mr. Moraida failed to affirmatively respond to the poll query, the trial court should have ceased the colloquy and returned the jury for further deliberations. Appellant cites two cases for his proposition, which we discuss in order. The Court of Criminal Appeals in *White v. State* faced quite a disparate factual situation.[2] There the presiding juror signed the verdict form which stated: "We, the jury, find the defendant 'not guilty.'" Where the presiding judge had signed the instructions, was written the word "guilty." The second verdict form finding the defendant guilty as charged in the information, was blank. Over objection, and without the opportunity to poll the jury, the jury was returned to their chambers without explanation by the trial court. Because the trial court did not follow article 37.05 of the Texas Code

2. 492 S.W.2d 281, 282–83 (Tex.Crim.App. 1973)

of Criminal Procedure allowing the right to poll the jury coupled with the court's refusal to accept the not guilty verdict, the verdict amounted to an instructed verdict of guilty. Reversal resulted. Here, in contradistinction to *White,* appellant was afforded the opportunity to have the court poll the jury-twice. There was no written verdict or verbal protestation of not guilty. The closest Mr. Moraida got to saying "not guilty" was his query: "If I vote no, am I going to have to ..." and again "If you voted not guilty, would we stay in that room back there until we came up with a yes verdict?" We do not believe a juror's questions about procedures amount to an answer in the negative.[3]

Next, we turn to *Rodriguez v. State.*[4] There the jury returned a not guilty verdict and the presiding juror stated they signed the wrong form. The prosecutor was allowed to question the presiding juror about the verdict over appellant's objections. Then a jury poll produced an initial response of not guilty from the first juror. After further court inquiry, she changed her statement to guilty. The remaining jurors followed suit. The verdict form was altered with the word "not" crossed out leaving only the second word "guilty." Following *White, supra,* the San Antonio Court found reversible error was committed by not following article 37.05. And the totality of the circumstances surrounding the inexplicable altered verdict cast doubt on the entire transaction.[5] Unlike, *Rodriguez,* we are not dealing with a retired non-lawyer judge admittedly unfamiliar with article 37.05. Rather, the veteran Judge Mike Wilkinson, even without a not-guilty statement, returned the jury to its chambers. Questioning was only

appropriately done by the court, and the verdict form was guilty in both presentations made in open court. The record is clear and without alteration.

█ The State contends that appellant waived any error by failing to object. While appellant's trial counsel did state he had a contemporaneous objection indicating a question from a juror would have prompted a note from the judge, defense counsel ended this exchange requesting the court "Could you continue further into that line?" As requested, the trial judge again reiterated "Is it your verdict of guilty, Mr. Moraida, in Cause Number 738821?" Soon thereafter the jury retired and returned again with a verdict, and there were no further questions by Mr. Moraida. We hold this objection was not timely and specific, and therefore, it did not preserve error.[6] Assuming arguendo appellant properly preserved error, we will nevertheless determine whether the court's conduct resulted in error.

The Texas Code of Criminal Procedure article 37.05 states:

> The State or the defendant shall have the right to have the jury polled, which is done by calling the separate name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer in the negative, the jury shall retire again to consider its verdict.

We are essentially dealing with the last portion of the rule: "but if any juror answer in the negative, the jury shall retire again to consider its verdict." The threshold application requires at least one juror

---

3. TEX. CODE CRIM. PROC. ANN. art. 37.05.

4. 830 S.W.2d 282 (Tex.App.—San Antonio 1992), *pet. dism'd, improvidently granted,* 848 S.W.2d 141, 142 (Tex.Crim.App.1993)).

5. *Id.* at 285.

6. *Turner v. State,* 805 S.W.2d 423, 431 (Tex. Crim.App.1991). We note appellant also moved for mistrial on the basis that the discussion with the juror required a unanimous verdict in order for the jury to be released. Appellant does not raise this issue here.

to give a "no" or negative response.[7] What occurred was an exchange of information, the juror insisting on "what if" scenarios. The trial judge had no discretion but to follow article 37.05 once he was requested to poll the jury. Indeed the judge returned to the proper and only material question: asking each juror if the verdict is his.[8] It is true a trial judge could easily slip into error if he or she were to engage in judicial coercion, tampering with the jury process, commenting on the weight of the evidence, giving additional instructions of law on the offence or facts,[9] communicating with the jurors other than in writing,[10] or inquiring into the jury deliberative process.[11] No such impermissible conduct occurred. We hold that the trial judge is charged by article 37.05 to use reasonable means to ask and ascertain from each juror if the verdict is his or hers.

■ Finally, in the most analogous authority to our situation, the Texas Supreme Court in 1854 faced an equivocal juror who articulated some misgivings about the defendant's intent to murder.[12] Nevertheless, the juror stated he yielded to the majority. The juror would not further consider his verdict or disagree with his fellow jurors. "While the law respects individual judgments, and will not receive a verdict to which every juror has not yielded his voluntary consent, it cannot prevent him from yielding, if he will, his own judgment in deference to the opinions of his fellows."[13] The law does not require obstinacy. Indeed, harkening to former times, the court observed, jurors were kept without meat, drink, fire or candle "till they were unanimously agreed."[14] If a juror held out, he could be threatened or imprisoned. Under these arcane practices the judges might even carry the recalcitrant jurors round the circuit, town to town, in a cart until a verdict was extracted.[15] Here the trial judge judiciously afforded the juror more than ample opportunity to indicate any objection to the verdict. The juror voiced no negative to the verdict and affirmatively avowed the verdict. We find no error.

The judgment is affirmed.

FOWLER, Justice, concurring.

The majority opinion contains a very interesting and informative discussion of the trial court's alleged error when it failed to return the jury to the jury room to deliberate further after one of the jurors indicated some confusion about the conviction process. However, because appellant waived any error by failing to object, the discussion is unnecessary. *See* Tex.R.App. P. 33.1; *Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App.1991).

Here, the majority concluded that a timely and specific objection was not made and thus error was not preserved. I agree

---

7. *See White* and *Rodriguez, supra.*

8. Tex.Code Crim. Proc. Ann. art. 37.05.

9. *McFarland v. State*, 928 S.W.2d 482, 517–18 (Tex.Crim.App.1996) (holding communication between jury and court does not amount to additional instructions where trial judge answers "no" to a request for the definition of "society"); *Bean v. State*, 17 Tex.App. 60 (1884) (affirmative answer to polling question is conclusive and does not allow further inquiry).

10. Tex.Code Crim. Proc. Ann. art. 36.27 (Vernon 1981).

11. *See Foreman v. Texas Employers Ins. Assn.*, 150 Tex. 468, 241 S.W.2d 977 (1951).

12. *See Henderson v. State*, 12 Tex. 525, 526–27 (1854).

13. *Id.* at 533.

14. *Id.*

15. *Id.*

with this conclusion. Not having made an objection, appellant failed to preserve error, and nothing is presented for us to review. *See Green v. State,* 912 S.W.2d 189, 192 (Tex.Crim.App.1995). Consequently, I believe we need not address further appellant's issue for review. For this reason, I concur in the result only.